STATE OF CONNECTICUT *v.* MARCOS C.
DOUROS, JR.
(AC 24964)

Bishop, McLachlan and Hennessy, Js.

---

Submitted on briefs April 29—officially released August 2, 2005

*Adam A. Laben* and *Denise P. Ansell* filed a brief for the appellant (defendant).

*Kevin T. Kane*, state's attorney, *Michael E. Kennedy* and *Nancy L. Chupak*, assistant state's attorneys, and *Ronald W. Crawley*, certified legal intern, filed a brief for the appellee (state).

BISHOP, J. The defendant, Marcos C. Douros, Jr., appeals from the judgment of conviction, rendered after the trial court accepted his conditional plea of nolo contendere[1] to the offense of criminal possession of a weapon in violation of General Statutes § 53a-217. The court accepted the defendant's plea after it denied his motion to suppress. On appeal, the defendant claims that the court improperly denied his motion to suppress because the police did not have consent to conduct the warrantless search of his room in the home in which he was living. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the issues on appeal. On April 2, 2002, Page Hauser,[2] Richard Morgan and another officer with the Waterford police department, responded to a domestic disturbance call at 26 Rock Ridge Road in Waterford. When they arrived, the officers spoke with Vaso Williams, who indicated that her

---

[1] The defendant's plea was accepted pursuant to General Statutes § 54-94a and Practice Book § 61-6.

General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress . . . would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . ."

Practice Book § 61-6 (a) (2) (i) provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's (a) motion to suppress evidence based on unreasonable search or seizure . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . ."

[2] At the time of the arrest, Hauser's last name was Lindsey.

brother, the defendant, was going crazy and that she feared for her safety and for the safety of her family. The officers saw the defendant arguing with his brother, Peter Douros, at the rear of the house. As they approached, the defendant ran into a wooded area. The officers pursued him, but shortly into the chase they lost sight of him. They then called police headquarters to secure canine support to locate the defendant.

After giving up the chase, Hauser and another officer entered the house to speak with family members. The defendant's mother, Felia Douros, who was approximately seventy-eight years old, told the officers that her son had mental problems and that she had seen him walking out of his bedroom with cocaine. Peter Douros and Williams told the officers that they believed that the defendant kept rifles in his room. Aware that the defendant was a convicted felon, the officers searched the defendant's room where they discovered and seized rifles and ammunition. The police later arrested the defendant and charged him with criminal possession of a weapon and breach of the peace.

The defendant thereafter filed a motion to suppress, arguing that the officers improperly searched his room and seized the weapons without a search warrant. On October 28, 2003, the court, *Cofield, J.*, held a hearing on the defendant's motion to suppress. At the hearing, Hauser testified that after the defendant had fled from the scene, Felia Douros invited the officers into the house and led Hauser to the defendant's room on the second floor. Hauser also stated that the door to the room was slightly ajar. Hauser further claimed that Felia Douros told her that she entered the room on a routine basis to do laundry and cleaning and that the door to the room never was locked. Hauser testified that during this conversation, Felia Douros gave her authorization to search the room. Hauser stated that when she entered the room and saw rifles and ammunition there, she

contacted her supervisor, Detective Joseph DePasquale, to ensure that she was handling the search and seizure process properly. DePasquale testified that when he arrived at the house, Felia Douros repeated to him and to Hauser that she often entered the defendant's room to clean and to do laundry. DePasquale also stated that Felia Douros gave them permission to enter the room. During the course of their presence in the house, the officers seized the rifles and ammunition.

At the hearing, Felia Douros testified that she had not given permission to any of the police officers to search the defendant's room. She testified that none of the police officers asked her if she had routine access to the defendant's room and denied that she ever went into the defendant's room. She testified that the defendant was forty-seven years old at the time of the hearing and that he did his own laundry. She also testified that she remained downstairs while the officers searched the defendant's room and speculated that perhaps her daughter, Williams, had given permission to the officers to search the defendant's room.

On October 29, 2003, the court issued its decision denying the defendant's motion to suppress. In the decision, the court expressed some skepticism over the fact that the officers had not obtained Felia Douros' written consent to search the defendant's room and that they had not documented her oral consent as part of their written report of the incident and the defendant's arrest. The court found, nevertheless, that the officers' testimony was credible. It credited police testimony that Felia Douros had shown them the defendant's room, had told them that she had access to the room and that it was never locked, and, finally, that she had given them permission to enter and to search the defendant's room. After the court denied the motion to suppress, the defendant entered a conditional plea of nolo conten-

dere to the charge of criminal possession of a weapon,[3] which the court accepted. This appeal followed. The case was argued initially before this court on November 16, 2004. Following argument, we issued an opinion, *State* v. *Douros*, 87 Conn. App. 122, 864 A.2d 57 (2005), in which we remanded the case to the trial court to make a determination, under General Statutes § 54-94a, whether the motion to suppress was dispositive.[4] On March 22, 2005, the court, *Clifford, J.*, determined that the motion had been dispositive. We thereafter undertook our assessment of the claim on appeal.

On appeal, the defendant argues that the police did not have consent to search his bedroom because Felia Douros did not have authority to consent to a search and, therefore, the search and seizure violated his constitutional rights.[5]

"On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence. . . . Because a trial court's determination of the validity of a . . . [seizure] implicates a defendant's constitutional rights, however, we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evi-

---

[3] The state entered a nolle prosequi on the charge of breach of the peace.

[4] See footnote 1.

[5] The defendant claims specifically that the trial court's actions resulted in a violation of his rights under the fourth amendment to the United States constitution, and article first, § 7, of the constitution of Connecticut. Because the defendant has failed to provide an independent analysis under the state constitution, we limit our review to the defendant's federal constitutional claims. See, e.g., *State* v. *Colon*, 272 Conn. 106, 362 n.145, 864 A.2d 666 (2004).

The defendant does not argue on appeal that the consent was not given freely and voluntarily.

dence." (Internal quotation marks omitted.) *State* v. *Barlow*, 70 Conn. App. 232, 244–45, 797 A.2d 605, cert. denied, 261 Conn. 929, 806 A.2d 1067 (2002).

"On a motion to suppress, [i]t is the function of the trier to determine the credibility of witnesses and the weight to be given their testimony. . . . It is axiomatic that searches and seizures inside a home without a warrant are presumptively unreasonable. . . . A warrantless search or entry into a house is not unreasonable, however . . . when a person with authority to do so has freely consented. . . . It is the state's burden to prove that the consent was freely and voluntarily given, and that the person who purported to consent had the authority to do so. . . . Such consent may not be established by mere acquiescence to police authority. . . . Whether there was valid consent to search is a factual question that will not be lightly overturned on appeal. . . .

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. . . . Common authority is . . . not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (Citations omitted; internal quotation marks omitted.) *State* v. *Vazquez*, 87 Conn. App. 792,

802–803, 867 A.2d 15, cert. denied, 273 Conn. 934, 875 A.2d 544 (2005).

Our Supreme Court has stated: "In order for third-party consent to be valid, the consenting party must have possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." (Internal quotation marks omitted.) *State* v. *Jones,* 193 Conn. 70, 80, 475 A.2d 1087 (1984). *Jones* involved a similar claim where a defendant, who was seventeen years old, moved to suppress evidence that was seized from his bedroom during a search, to which his father had consented. After the trial court heard conflicting evidence regarding the father's authority to consent, it concluded that the father had sufficient control over the room to authorize the search. Id., 81. The court found, inter alia, that the defendant, who was a minor, did not pay rent and kept his bedroom door unlocked. Id. The court also found that the father entered the room whenever he believed he had reason to do so. Id. On appeal, the Supreme Court held that the trial court's determination that the parents retained sufficient control over the defendant's bedroom to enable them to authorize a search of the room was not clearly erroneous. Id.

In this case, the court found that the Felia Douros had the authority to consent to a police search of the defendant's room and that she had, in fact, consented to the search. After a careful examination of the record, we conclude that there was adequate evidence for the court to find that Felia Douros exercised sufficient control over the defendant's bedroom to consent validly to a search of it by the police. The record reflects that Felia Douros owned the house and that the defendant resided in the house with her and her husband. As in *Jones,* the court found that the defendant did not have a lock on his bedroom door and that Felia Douros had routine access to the room to do laundry and cleaning.

Felia Douros also admitted that the defendant's sister, Williams, who had lived there previously, had "free reign" of the entire house during her visits to it.

While we recognize that the evidence at the suppression hearing was in conflict regarding Felia Douros' access to the room and specifically whether she authorized the police to search it, our function is not to resolve any testimonial conflicts, but rather to determine whether there was sufficient evidence to sustain the court's factual conclusions. Here, despite the conflict between Felia Douros' testimony and that of the police officers regarding the consent to search given by Felia Douros, and the court's patent skepticism regarding the failure of the police to document her consent to their search, the court credited the testimony of the officers that she had, in fact, given them consent to search the room. "[W]here there is conflicting testimony, it is uniquely the function of the trier of facts to weigh the evidence and assess the credibility of witnesses." *State v. MacNeil*, 28 Conn. App. 508, 514, 613 A.2d 296, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992). Our careful review of the record and the court's findings lead us to conclude that the court's factual determinations were not clearly erroneous. Therefore, the court properly denied the defendant's motion to suppress the evidence seized by the police from the defendant's room.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The defendant also argues that the police did not have probable cause to even request the search. This claim is foreclosed by the court's finding that Felia Douros had consented to the search. "It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search [or seizure] that is conducted pursuant to consent." (Internal quotation marks omitted.) *State v. Nowell*, 262 Conn. 686, 699, 817 A.2d 76 (2003).